UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cv-681-MOC-DSC

| TIMOTHY S. GILL, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COCA-COLA BOTTLING CO. CONSOLIDATED, | ) | **ORDER** |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on a motion to dismiss filed by Defendant Coca-Cola Consolidated, Inc., pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 7.1. (Doc. No. 9).

**I.      PROCEDURAL BACKGROUND**

Pro se Plaintiff Timothy Gill has filed this employment discrimination action against Defendant, alleging that he was terminated from his employment on June 22, 2018, with Defendant "because of [his] disability, age, and race," presumably in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et seq.; and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.[1] Plaintiff filed this action on December 28, 2018, and he filed an Amended Complaint on February 6, 2019, after this Court entered an order pointing out deficiencies in Plaintiff's original Complaint.

---

[1] Plaintiff mentions the Americans with Disabilities Act in his Amended Complaint, but he does not specifically cite Title VII or the ADEA.

1

On May 24, 2019, Defendant filed the pending motion to dismiss the Amended Complaint. (Doc. No. 9). Defendant contends that Plaintiff's race and age claims must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff did not allege these claims in his underlying EEOC Charge of Discrimination and he therefore failed to exhaust his administrative remedies. Defendant further contends that Plaintiff's ADA claim should be dismissed for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff filed a response on June 18, 2019, and Defendant filed a Reply on June 25, 2019. (Doc. No. 13, 14). This matter is therefore ripe for disposition.

## II. PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff alleges that he began his employment with Defendant as a temporary employee on or about August 2, 2003. (Doc. No. 5 at p. 1: Am. Compl.). In around 2014 or 2015, Plaintiff began experiencing health issues, including heart failure, mental health issues, and diabetes. (Id.). The diabetes caused Plaintiff to develop sores on his left foot, ultimately resulting in the amputation of the toes on his left foot in 2015. (Id.). In around May 2017, Plaintiff began experiencing holes and swelling in his right foot due to the diabetes. (Id. at p. 3).

Plaintiff alleges that in September 2017 he was working in Defendant's "Legacy Department," but he does not identify his job title or duties. (Id.). Plaintiff alleges that in early September 2017 he experienced heart failure, necessitating a period of hospitalization and leave. (Id.). Plaintiff alleges that when he returned to work in late September 2017 he was offered a position on the "CONA" team.[2] (Id.). Plaintiff alleges he was told he had to successfully

---

[2] Plaintiff does not explain in the Amended Complaint what the "CONA" team is or how it operates. The Court takes judicial notice that an internet search indicates that CONA is an

complete six months of training before he could receive a pay increase associated with the new position.  (Id.).

Plaintiff begin training for the new CONA position on October 2, 2017.  (Id.).  Plaintiff alleges that he was training for the new position while performing his other work with the Legacy Department.  (Id.).  According to Plaintiff, this obligated him to work twenty hours of overtime per week.  (Id.).  Plaintiff alleges that he was having heart palpitations and high blood pressure during this time.  (Id.).  Plaintiff's heart specialist communicated with Defendant regarding Plaintiff's condition, which resulted in him no longer being required to work overtime.  (Id.).

Plaintiff participated in about four weeks of training for the CONA position.  (Id. at pp. 3-4).  In early November 2017, Plaintiff took leave under the Family and Medical Leave Act because the wound in his right foot caused by diabetes was not healing.  (Id. at p. 4).  Plaintiff remained out of work from early November 2017 through the first week of March 2018.  (Id.).  When he came back to work, he returned to work in the Legacy Department, and he was told he would need to complete a six-week training program and pass a test to move into the CONA position.  (Id.).  Employees who did not pass the test the first time would be permitted an additional two-week period to study and then re-take the test.  (Id.).  Plaintiff participated in the six-week training program and took the test at the end of that training, but he did not pass the test.  (Id.).  Plaintiff was afforded the two-week period of additional study and the opportunity to re-take the test, but he was also notified that if he "did not pass the test after two weeks then [he] would be severed from" employment with Defendant.  (Id. at p. 5).  This notification coincided

---

acronym for Coke One North America, and it is an IT platform for Defendant's North American bottling business.

with a May 25, 2018, letter notifying Plaintiff that his position with the Legacy Department was being eliminated. (Id.).

Plaintiff alleges that he completed the first week of additional CONA training, but he "did not finish the second week" of additional training. (Id.). He alleges that, instead, he "was pulled out from work by the wound care doctor because [he] could not tolerate the pain any longer." (Id.). The Amended Complaint does not indicate whether Plaintiff would return to work, or how long he needed to be on leave. Plaintiff asserted in his EEOC Charge that he was initially placed on leave on or about June 12, 2018, through June 20, 2018. (Doc. No. 1 at p. 7). On June 19, 2018, Plaintiff notified Defendant that his "doctor extended [his] medical leave for additional two months." (Id.). Plaintiff asserted in his EEOC Charge that Defendant terminated Plaintiff's employment three days later on June 22, 2018, with an explanation that he was being terminated for not passing the CONA training. (Id.).

### III. STANDARD OF REVIEW

Defendants have moved for dismissal of Plaintiff's claims under Rule 12(b)(1) and Rule 12(b)(2) of the Federal Rules of Civil Procedure. When determining the existence of subject matter jurisdiction, the Court may look to evidence outside the pleadings without converting a Rule 12(b)(1) motion to a motion for summary judgment. See, e.g., Evans v. B. F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), 'the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" Id. (citations omitted). The plaintiff bears the burden of proving subject matter jurisdiction exists. Id.

Federal Rule of Civil Procedure 12(b)(6) provides that a motion may be dismissed for

failure to state a claim upon which relief can be granted. A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint without resolving contests of fact or the merits of a claim. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992), cert. denied, 510 U.S. 828 (1993). Thus, the Rule 12(b)(6) inquiry is limited to determining if the allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief" pursuant to Federal Rule of Civil Procedure 8(a)(2). To survive a defendant's motion to dismiss, factual allegations in the complaint must be sufficient to "raise a right to relief above a speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, a complaint will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

For the purposes of a Rule 12(b)(6) analysis, a claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the plaintiff. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014). In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pleaded factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679. Finally, when the plaintiff is proceeding pro se, the court must liberally construe the complaint. See Jehovah v. Clarke, 798 F.3d 169, 176 (4th Cir. 2015) (citing Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)).

5

### IV. DISCUSSION

**A. Plaintiff's Disability Discrimination Claim under the ADA**

To state a claim for a violation of the ADA, Plaintiff must plead facts showing that he "(1) was a qualified individual; (2) was discharged; (3) was fulfilling the legitimate expectations of the employer; and (4) the circumstances of the discharge raise a reasonable inference of unlawful discrimination." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 150 (4th Cir. 2012)). Although Plaintiff's Amended Complaint is not a model of clarity, he does allege facts showing that he suffered from various health impairments, that he was required to take time off work for his health problems, that he was generally performing according to Defendant's reasonable expectations, and that he was fired from his job when he informed Defendant that he would need to take leave for health reasons. This Court is required to liberally construe the complaint of a pro se plaintiff when addressing a motion to dismiss. See Jehovah v. Clarke, 798 F.3d 169, 176 (4th Cir. 2015) (citing Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014)). Given Plaintiff's pro se status, taking Plaintiff's allegations as true, and construing all inferences liberally in his favor, the Court will deny Defendant's motion to dismiss Plaintiff's ADA claim, and the Court will allow the parties to further develop the record with regard to the circumstances leading to Plaintiff's termination and Plaintiff's alleged qualifying disability under the ADA.

**B.     Plaintiff's Claims for Age and Race Discrimination**

After being terminated from his employment with Defendant, Plaintiff filed a Charge with the EEOC on July 3, 2018. (Doc. No. 1 at p. 7). In the EEOC Charge, Plaintiff's sole claim was that he was discriminated against based solely on a disability in violation of the ADA. (Id.). That is, Plaintiff checked only one box on the form, indicating that the discrimination was based on "disability." (Doc. No. 1 at p. 7). Furthermore, Plaintiff alleged on the form that "I

6

believe I have been subjected to discrimination based on my disability in violation of The Americans with Disabilities Act of 1990, as amended." (Id.). The EEOC issued a Notice of Right to Sue on October 1, 2018, informing Plaintiff that the EEOC was unable to conclude that the information obtained established ADA violations. (Id. at p. 9).

"The scope of the Plaintiff's right to file a federal lawsuit is determined by the [EEOC] charge's contents." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). A claim is generally barred if the EEOC charge alleges one type of discrimination, such as race, and the lawsuit alleges a different type of discrimination, such as sex. Id. Indeed, a "plaintiff fails to exhaust his administrative remedies where ... his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005). Because Plaintiff did not raise age or race discrimination claims in his EEOC Charge, those claims will be dismissed for failure to exhaust administrative remedies.[3] See Underdue v. Wells Fargo Bank, N.A., No. 3:14cv183, 2016 WL 3452492, at *2 (W.D.N.C. June 6, 2016) (noting that "the ADA, Title VII, and the ADEA share enforcement procedures, including the requirement that a plaintiff must first exhaust administrative remedies before filing a federal lawsuit").

V.     CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's claims for age and race discrimination under the ADEA and Title VII. Defendant's motion to

---

[3] The Court notes that, while Defendant filed the motion to dismiss the age and race claims based on lack of subject matter jurisdiction, the Supreme Court recently held that Title VII's charge-filing rule is a mandatory "claim processing rule," but it is not jurisdictional, and it can, therefore, be forfeited if the party asserting the rule takes too long to raise the issue. Fort Bend Cty, Texas v. Davis, 139 S. Ct. 1843, 1849 (2019) (abrogating Jones v. Calvert Group, Ltd., 551 Fed. 297 (4th Cir. 2009)).

dismiss is **DENIED** as to Plaintiff's claim of discrimination under the ADA.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Dismiss (Doc. No. 9), is **GRANTED** in part and **DENIED** in part in accordance with this Order.

Signed: September 16, 2019

Max O. Cogburn Jr
United States District Judge